MICHAEL O'KEEFE, Plaintiff-Appellant, v. RETIREMENT BOARD OF THE FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, CITY OF CHICAGO, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—92—3772

Opinion filed October 27, 1994.

J. Peter Dowd and Linda Wyetzner, both of Dowd & Bloch, of Chicago, for appellant.

Fagel & Haber, of Chicago (Steven J. Teplinsky, Maynard B. Russell, and Lawrence T. Krulewich, of counsel), for appellees Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago and Donald Stensland.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellees City of Chicago and Donald Stensland.

JUSTICE CAHILL delivered the opinion of the court:

Michael O'Keefe appeals the dismissal of his suit to recover salary, disability and medical benefits for injuries suffered as a Chicago firefighter. We affirm in part, reverse in part, and remand.

O'Keefe was a fire department paramedic. He was injured on duty in a traffic accident while driving an ambulance on May 29, 1988. He refused to take drug and alcohol tests required of firefighters after a traffic accident which involves injuries.

O'Keefe was placed on disability leave with full salary, as required under section 7.3 of the labor contract between the City of Chicago (City) and the Chicago Fire Fighters Union. The contract requires the City to pay all hospital and medical costs of employees injured on duty.

On August 24, 1988, the fire department fired O'Keefe for his refusal to submit to a drug and alcohol test. The City stopped paying his salary and medical bills after that date.

O'Keefe filed a grievance alleging that he was fired without cause. He sought reinstatement and also alleged that under the labor contract he was owed a full year of salary and all medical costs. The grievance went to arbitration. The arbitrator issued awards on January 9, 1991, and July 26, 1991. He upheld O'Keefe's discharge, but held that O'Keefe was owed salary and benefits for a full year— from May 29, 1988, to May 29, 1989. After the arbitrator's decision and until now, the City has paid O'Keefe only part of one year's salary and no medical costs.

On September 4, 1991, O'Keefe applied to the Retirement Board of Firemen's Annuity & Benefit Fund (Retirement Board) for duty disability benefits under section 6—151 of the Illinois Pension Code (Ill. Rev. Stat. 1987, ch. 108$^1$/$_2$, par. 6—151). Under that section, a firefighter injured on duty is entitled to 75% of his salary for as long as he is disabled until compulsory retirement age. Ill. Rev. Stat. 1987, ch. 108$^1$/$_2$, par. 6—151.

The Retirement Board rejected O'Keefe's application as untimely because he submitted it after he was fired. O'Keefe filed a motion for reconsideration which was denied. He then filed a complaint for administrative review in the circuit court. He named the Retirement Board, the City of Chicago, and Donald Stensland, a deputy fire commissioner of the fire department and a representative of the City in the discharge and arbitration proceedings, as defendants. He al-

leged that the City's termination of benefits and failure to pay the arbitration awards violated section 1983 of the Civil Rights Act (42 U.S.C.A. § 1983 (West 1988)). He also alleged that the Retirement Board's refusal to pay duty disability benefits violated section 1983 and the Illinois Pension Code.

Defendants moved to dismiss the complaint under section 2—615 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—615.) The trial court granted the motion.

■ We first address the dismissal of O'Keefe's section 1983 claim against the City. The complaint alleged that O'Keefe was deprived of procedural due process when the City paid only part of the arbitration awards. The trial court ruled that O'Keefe's complaint stated a cause of action against the City for the balance due on the arbitration awards, but did not state a cause of action under section 1983 because his remedies under State law were adequate. The court then granted O'Keefe leave to file an amended complaint to enforce the arbitration awards. As of the filing of this appeal, O'Keefe has not amended his complaint or filed a separate action to compel the City to pay the arbitration awards.

O'Keefe argues that the trial court's dismissal of his section 1983 claim is error because he is not required to exhaust his State remedies before filing a section 1983 claim, either in Federal or State court. (*Patsy v. Board of Regents* (1982), 457 U.S. 496, 73 L. Ed. 2d 172, 102 S. Ct. 2557.) We disagree. O'Keefe's procedural due process claim under section 1983 is defective, not because he failed to exhaust State remedies, but because he has not shown that they are inadequate under a due process analysis. See *Kauth v. Hartford Insurance Co.* (7th Cir. 1988), 852 F.2d 951; *Towne v. Town of Libertyville* (1989), 190 Ill. App. 3d 563, 546 N.E.2d 810.

In *Kauth*, the Seventh Circuit confirmed what has become a settled rule in section 1983 actions alleging a denial of procedural due process: a complaint does not state a cause of action unless it challenges the fundamental fairness of the State's procedures. (*Kauth*, 852 F.2d at 956, citing *Daniels v. Williams* (1986), 474 U.S. 327, 339-40, 88 L. Ed. 2d 662, 673-74, 106 S. Ct. 662 (Stevens, J., concurring), and *Hudson v. Palmer* (1984), 468 U.S. 517, 539, 82 L. Ed. 2d 393, 411, 104 S. Ct. 3194, 3206-07.) In *Towne*, this court affirmed the dismissal of a section 1983 action. The plaintiff failed to pursue State eminent domain proceedings and then failed to allege that they were inadequate in his section 1983 complaint that his property was taken without just compensation. *Towne*, 190 Ill. App. 3d at 568.

If the process available in the State action is adequate, due pro-

cess is satisfied, and no section 1983 claim can lie. *Parratt v. Taylor* (1981), 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908.

O'Keefe does not allege that the grievance and arbitration procedures available to discharged firefighters are constitutionally inadequate, nor could he: with an arbitration award in hand, O'Keefe has several State law alternatives for relief. The simple and direct approach is an action to reduce the awards to a judgment under the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 1992)).

■ We next address the claims against the Retirement Board. O'Keefe's complaint contains two allegations which attack the Retirement Board's denial of duty disability benefits: (1) that the denial relied on an erroneous interpretation of the Pension Code and (2) interfered with O'Keefe's rights under section 1983 of the Federal Civil Rights Act. These claims are intertwined, and the trial court rejected them both, relying on *Di Falco v. Board of Trustees of the Firemen's Pension Fund of the Wood Dale Fire Protection District No. One* (1988), 122 Ill. 2d 22, 521 N.E.2d 923. *Di Falco* holds that a firefighter has no right to disability benefits under article 4 of the Pension Code unless he applies for those benefits while still employed.

Di Falco was a probationary firefighter in Du Page County, Illinois. In October 1982, Di Falco injured his spine while working. He began disability leave on December 2, 1982. The fire commissioners discharged him on May 26, 1983. On May 24, 1984, Di Falco submitted an application for a duty-related pension under the Pension Code (Ill. Rev. Stat. 1981, ch. 108½, par. 4—110). His application was denied because he submitted it after he was discharged. The supreme court affirmed, interpreting article 4 of the Pension Code to require that a firefighter submit an application for benefits before discharge. *Di Falco*, 122 Ill. 2d at 33.

Our case differs from *Di Falco*. O'Keefe filed for disability under article 6 of the Pension Code. Because of the differences between articles 4 and 6, we believe that the court's analysis in *Di Falco* does not control the outcome of O'Keefe's claim.

Article 4 governs firefighters who work in municipalities of less than 500,000 people (Ill. Rev. Stat. 1981, ch. 108½, par. 4—101 *et seq.*), and section 4—110 governs their right to receive a duty-related disability benefit (Ill. Rev. Stat. 1981, ch. 108½, par. 4—110). Article 6 governs firefighters who work in Chicago (Ill. Rev. Stat. 1987, ch. 108½, par. 6—101 *et seq.*), and section 6—151 governs duty-related disability benefits (Ill. Rev. Stat. 1987, ch. 108½, par. 6—151). The supreme court analyzed Di Falco's entitlement to a duty disability benefit under section 4—106, which defines a "fireman" as "any person *** employed by a city in its fire service as a fireman." (Ill.

Rev. Stat. 1981, ch. 108¹/₂, par. 4—106.) The court noted that section 4—101 provides that the pension fund was established for the benefit of firefighters, defined as persons *employed* by a city in its fire service. The court stated, "a discharged fire fighter is obviously not 'employed,' in any sense of the word, by a city in its fire service and the pension fund was not established for his benefit." *Di Falco*, 122 Ill. 2d. at 27-28.

The article 6 definition of "fireman" differs from that in article 4. A "fireman" under article 6 is "[a]ny person who *** *was*, is, or shall be employed by a city in its fire service as a fireman." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 108¹/₂, par. 6—106.) The difference in definitions is apparent. Section 6—101 provides: "a firemen's annuity and benefit fund shall be created, set apart, and maintained, for the benefit of its firemen." (Ill. Rev. Stat. 1987, ch. 108¹/₂, par. 6—101.) Since the definition of an article 6 fireman includes a person who *was employed* as a fireman, O'Keefe, even after discharge, is entitled to apply for a pension benefit.

There is additional statutory support for this analysis. In considering whether Di Falco was entitled to benefits under section 4—110 when he applied after discharge, the supreme court emphasized that the section contained only the term "fireman," earlier defined as firefighters *employed*. Section 6—151 on the other hand uses two terms: "fireman" and "active fireman." An "active fireman" is defined as "[a]ny person employed and receiving salary as a fireman." Ill. Rev. Stat. 1987, ch. 108¹/₂, par. 6—109.

The Retirement Board argues the term "active fireman" applies both to the time when a fireman is injured and when he applies for benefits. O'Keefe contends the section mandates that a fireman be "active" only at the time of his injury, not at the time he claims duty disability benefits.

We agree with O'Keefe's reading. Under the first paragraph of section 6—151, a person who is an "active fireman" *when injured* may receive a duty disability benefit, but only if he is not receiving a salary. Since an active fireman is defined as one who is employed and receiving a salary, he is ineligible under section 6—151 to receive a duty disability benefit. We conclude section 6—151 mandates that a fireman be active only at the time of injury to have a right to a duty disability benefit. Under the Retirement Board's analysis, an active fireman would be required to apply for a duty disability benefit before he becomes eligible and before he may even know he is eligible. A "catch 22" reading of the statute should give us pause.

O'Keefe contends that he was an active fireman when injured and a fireman, though discharged, when he applied for a duty disabil-

ity benefit. It is a contention that avoids an absurd result, and we are persuaded by it. We find that O'Keefe states a cause of action under the statute and the trial court erred in dismissing the claims against the Retirement Board.

■ Finally, O'Keefe argues that the Retirement Board should have been required to file the administrative record as its answer under section 3—106 of the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 110, par. 3—106). Our decision disposes of the motion to dismiss the claims against the Retirement Board as one granted in error because we distinguish *Di Falco*. That being the case, the cause is reversed and remanded to the trial court and the Retirement Board will be required to proceed under the provisions of the Administrative Review Law.

Affirmed in part; reversed in part and remanded.

HOFFMAN, P.J., and JOHNSON, J., concur.