2026 IL App (4th) 250468-U

NO. 4-25-0468

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
April 30, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| RICHARD L. PENCE, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| BRENDAN KELLY, in His Official Capacity as Director | ) | No. 24MR104 |
| of the Illinois State Police, and ROBERT A. MATOS, | ) | |
| Individually, | ) | Honorable |
| Defendants-Appellees. | ) | Gail L. Noll, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly dismissed plaintiff's second amended complaint because the allegations failed to state a claim plaintiff was unconstitutionally deprived of his right to possess firearms.

¶ 2    Plaintiff, Richard L. Pence, appeals the dismissal of his second amended complaint against defendants, Brendan Kelly and Robert A. Matos, under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2024)). Plaintiff contends the allegations in the complaint show defendants' revocation of his Firearm Owners Identification (FOID) card under section 8.1 of the FOID Act (430 ILCS 65/8.1 (West 2024)) violated his constitutional right to possess firearms as applied to him. We affirm.

¶ 3                            I. BACKGROUND

¶ 4    There are four counts in plaintiff's second amended complaint, all of which he brought under section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2024)). Count I alleged

that section 8.1 of the FOID Act (430 ILCS 65/8.1 (West 2024)) violated the second amendment to the United States Constitution (U.S. Const., amend. II) "as applied to clear and present danger reports as currently written" and sought to enjoin Kelly, as the director of the Illinois State Police (ISP), from "revoking or otherwise invalidating FOID cards based on clear and present danger reports." The remaining counts were directed against Matos, an ISP officer, in his individual capacity. Counts II and III alleged Matos violated plaintiff's "well settled rights" under the second and first amendments (U.S. Const., amends. I, II), respectively. Count IV alleged Matos violated plaintiff's due process rights under the fourteenth amendment (U.S. Const., amend. XIV) by proximately causing plaintiff's FOID card to be invalidated "without notice or opportunity to be heard."

¶ 5        According to the allegations in the second amended complaint, plaintiff previously possessed a FOID card. Somehow and at some point unspecified by plaintiff, Matos became aware of "certain statements" allegedly made by plaintiff. Plaintiff denied knowledge of the statements' content, who he made them to, and in what manner he made them. However, he "[knew] that whatever he said, it indicated no objective threat of imminent or future lawless action." When Matos sought to speak with plaintiff about the statements in question, plaintiff "rebuffed" him. So, "in order to punish and retaliate" against plaintiff for refusing to speak with him, Matos "submitted a report or request" to the ISP, which indicated his belief that plaintiff posed a clear and present danger to himself or others. See 430 ILCS 65/8.1(d)(2) (West 2024). The complaint claimed "FOID invalidations *** almost never are denied, if they are in fact ever denied," and plaintiff's FOID card was subsequently "invalidated" based on Matos's "mere say so," even though plaintiff had never been "adjudicated or convicted of any disqualifying crimes or as being mentally defective."

¶ 6    Defendants responded by moving to dismiss plaintiff's claims under section 2-615 of the Code (735 ILCS 5/2-615 (West 2024)), alleging plaintiff failed to state a claim. Specifically, defendants argued the second amended complaint was replete with conclusory statements and "nothing more than a vague the-defendant-harmed-me pleading insufficient to avoid dismissal under Illinois' pleading standards" where plaintiff failed to include any specific factual allegations in support of his claims.

¶ 7    The trial court then conducted a hearing on the matter and ultimately granted defendants' motion to dismiss with prejudice, resulting in the dismissal of all claims. While no transcript of the hearing appears in the record, the court, by docket entry, explained its findings, noting Illinois law required a complainant to "state a claim by allegation of fact" and that "conclusions of law without stating facts [were] insufficient." The court also pointed out that to "state a Section 1983 claim, Plaintiff must allege facts sufficient to establish he was subjected to conduct which occurred under color of state law that violated a clearly established federal right." In addressing count I of the second amended complaint, the court indicated plaintiff "fail[ed] to allege facts sufficient to establish that the application of the challenged statute to him violate[d] his rights under the 2nd Amendment." As for the remaining counts, the court determined plaintiff's second amended complaint was "devoid [of] factual allegations to support a finding of any violation of a clearly established right under the identified amendments."

¶ 8    This appeal followed.

¶ 9                                II. ANALYSIS

¶ 10    On appeal, plaintiff argues this court should reverse and remand for further proceedings because the claims set forth in his second amended complaint sufficiently alleged violations of his first, second, and fourteenth amendment rights (U.S. Const., amends. I, II, XIV).

Defendants disagree.

¶ 11 The trial court dismissed plaintiff's complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2024)). A section 2-615 motion to dismiss contests the legal sufficiency of a complaint based on defects apparent on its face. *Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 15. When reviewing a section 2-615 motion, all well-pleaded facts and " 'all inferences that may reasonably be drawn in the plaintiff's favor' " are accepted as true. *Crampton v. Crampton*, 2017 IL App (3d) 160402, ¶ 10 (quoting *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97 (2004)). When deciding a section 2-615 motion, a court is limited to considering the facts apparent on the face of the pleadings, the matters subject to judicial notice, and judicial admissions in the record. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25.

¶ 12 Illinois is a fact-pleading jurisdiction (*Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 451 (2004)), and although a plaintiff is not required to set forth evidence in the complaint (*Chandler v. Illinois Central R.R. Co.*, 207 Ill. 2d 331, 348 (2003)), a plaintiff must allege facts that are sufficient to bring his claim within a legally recognized cause of action (*Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997)), and may not simply allege conclusions (*Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996)). "While a motion to dismiss admits all well-pleaded facts as true, the motion does not admit conclusions of law or conclusions of fact which are not supported by allegations of specific facts which form the basis of such conclusions." *Towne v. Town of Libertyville*, 190 Ill. App. 3d 563, 566 (1989). The standard of review for dismissal under section 2-615 is *de novo*. *Reynolds*, 2013 IL App (4th) 120139, ¶ 25.

¶ 13 A. Plaintiff's As-Applied Challenge

¶ 14 Plaintiff entreats this court to hold that section 8.1 of the FOID Act (430 ILCS

- 4 -

65/8.1 (West 2024)), as it applies to him, violates the second amendment to the United States Constitution. Specifically, plaintiff takes issue with the statute's requirement that (1) law enforcement officials notify the ISP of individuals suspected of posing a clear and present danger to themselves or others and (2) the ISP must determine whether to suspend or revoke a person's FOID card under section 8 of the FOID Act following such notification. See 430 ILCS 65/8.1(d) (West 2024). Defendants, on the other hand, argue plaintiff failed to allege facts with sufficient specificity to suggest that section 8.1 of the FOID Act is unconstitutional as applied to his situation. "[A]n 'as-applied' challenge protests against how a statute was applied in the particular context in which the challenging party acted or proposed to act. Accordingly, in an as-applied challenge, the challenging party's particular facts and circumstances become relevant." *People v. Gray*, 2017 IL 120958, ¶ 58. Stated differently, "[a]n as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36.

¶ 15        The FOID Act authorizes the ISP to seize an individual's FOID card when that individual's "mental condition is of such a nature that it poses a clear and present danger" to himself or another person. 430 ILCS 65/8(f) (West 2024). Section 1.1 of the FOID Act defines "clear and present danger," as a person who "demonstrates threatening physical or verbal behavior, such as violent, suicidal, or assaultive threats, actions, or other behavior, as determined by a *** law enforcement official." 430 ILCS 65/1.1 (West 2024). If an individual's dangerousness is determined by a law enforcement official, that official must notify the ISP of that individual's dangerousness within 24 hours of making that determination. 430 ILCS 65/8.1(d)(2) (West 2024). The ISP must then decide whether to suspend or revoke that person's FOID card under section 8 of the FOID Act. 430 ILCS 65/8.1(d) (West 2024). If it does, the ISP

must notify the cardholder in writing, state the reasons for whatever action it took, and advise that individual of their rights and obligations. 430 ILCS 65/9 (West 2024). Any person determined to be subject to the provisions of section 8(f) of the FOID Act may apply to the FOID Card Review Board (Board) and request relief from that prohibition. 430 ILCS 65/10(f) (West 2024). "Notwithstanding any other provision of [the FOID] Act or any other law to the contrary, the [ISP] shall provide the Board or any court with jurisdiction with all records relevant to the request for relief under Section 8.1." 430 ILCS 65/10(f) (West 2024).

¶ 16 Here, plaintiff, in his second amended complaint, failed to allege sufficient facts to properly plead that section 8.1 of the FOID Act is unconstitutional as applied to him. In setting forth the allegations in support of count I, plaintiff claimed that Matos, "in order to punish and retaliate against [him]," notified the ISP of certain unknown statements allegedly made by plaintiff that demonstrated threatening physical or verbal behavior. Consequently, plaintiff alleged Matos's "clear and present danger report" proximately caused plaintiff's FOID card to be "invalidated," even though no court had found plaintiff to be dangerous or mentally ill. But these are nothing more than conclusions unsupported by specific facts.

¶ 17 For instance, plaintiff's bare assertion that Matos retaliated against him is unsupported by any factual specificity. Plaintiff does not allege how, where, or when Matos approached him, and it is unclear how Matos became aware of plaintiff's purported statements. Plaintiff simply concludes that after he "rebuffed" Matos, Matos generated a "clear and present danger report" to punish him, which proximately caused plaintiff's FOID card to be "invalidated." In fact, plaintiff does not even specify whether his FOID card was suspended temporarily or revoked. Instead, he only vaguely alleges that his FOID card was "invalidated," a term not found in the statute. See 430 ILCS 65/8.1(d) (stating the ISP, upon being notified of an

individual's dangerousness, must determine whether to "suspend or revoke the person's [FOID] Card under Section 8 of [the FOID] Act"). He also fails to disclose whether he received written correspondence from the ISP after the "invalidation" of his FOID card and what specific reasons the ISP gave him for taking such action. See 430 ILCS 65/9 (West 2024). Relatedly, we also observe plaintiff's lack of disclosure as to whether he ever sought relief from the Board following the "invalidation" of his FOID card and what information the ISP would have provided. See 430 ILCS 65/10(f) (West 2024) (stating the ISP must "provide the Board or any court with jurisdiction with all records relevant to the request for relief under Section 8.1"). Did plaintiff threaten to shoot a cashier after the grocery store declined his credit card? Did he threaten to kill a local meteorologist because a severe weather report interrupted a television program? Was it something worse, or was it something innocuous? We cannot say because plaintiff failed to sufficiently substantiate this claim with facts and simply concludes that "FOID invalidations *** almost never are denied, if they are in fact ever denied."

¶ 18       We are cognizant of the standard that " 'a plaintiff is not required to prove his case in the pleading stage,' " but a plaintiff must still set forth " 'sufficient facts to state all the elements which are necessary to constitute his cause of action.' " *Visvardis v. Ferleger*, 375 Ill. App. 3d 719, 724 (2007) (quoting *Claire Associates v. Pontikes*, 151 Ill. App. 3d 116, 123 (1986)). Plaintiff failed to do so. His allegations are nothing more than factual and legal conclusions bereft of any specific factual support. As a result, this court is left to speculate on the content, context, and circumstances surrounding (1) plaintiff's statements in question, (2) plaintiff's interaction with Matos, (3) the ISP's process for "invalidation" of plaintiff's FOID card, and (4) the ISP's reasons for doing so. Accordingly, we find the trial court did not err in dismissing count I of the second amended complaint with prejudice because plaintiff failed to

allege facts with sufficient specificity to suggest that section 8.1 of the FOID Act, as it applies to plaintiff's situation, is unconstitutional. See *Thompson*, 2015 IL 118151, ¶ 36.

¶ 19                                  B. Plaintiff's Remaining Claims

¶ 20         To the extent plaintiff seeks relief based on the theory that Matos's action in notifying the ISP of plaintiff's dangerousness violated his first, second, and fourteenth amendment rights, his argument is forfeited. See *Perez v. Illinois Concealed Carry Licensing Review Board*, 2016 IL App (1st) 152087, ¶ 29. While plaintiff raised these claims in his second amended complaint, he abandons them on appeal and articulates no argument in his opening brief concerning Matos's alleged (1) retaliation against plaintiff for refusing to speak with him, (2) infringement of plaintiff's right to possess firearms, and (3) deprivation of plaintiff's due process rights. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). Instead, plaintiff contends the trial court "misapplied the law of qualified immunity" and erroneously dismissed his claims against Matos on that basis due to plaintiff's failure to plead any facts showing a violation of a "clearly established" right. Plaintiff, however, also forfeits this issue for review because he develops this argument for the first time on appeal. See *Martinez v. River Park Place, LLC*, 2012 IL App (1st) 111478, ¶ 29. ("It is well settled that issues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal.").

¶ 21         But even if we excuse plaintiff's forfeiture, plaintiff is wrong. Nothing in the record indicates the trial court considered dismissal on qualified-immunity grounds. For one thing, the question of whether qualified immunity barred plaintiff's claims against Matos was not argued before the trial court. In fact, plaintiff acknowledges defendants never raised it. The court also never even mentioned the words "qualified" or "immunity"—together or separately—in its

explanation of its findings. More importantly, " '[c]learly established' for purposes of qualified immunity means that '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The absence of any remark by the court on the ISP procedure of which plaintiff complains, or its possible violation of constitutional rights, lends credence to the conclusion that the court did not consider qualified immunity as a basis for dismissal. The absence of any reference to qualified immunity by anyone anywhere in the record lends even more.

¶ 22        "We presume the trial court knows the law and applies it properly, absent affirmative evidence to the contrary." *In re Commitment of Gavin*, 2019 IL App (1st) 180881, ¶ 55. "There must be 'strong affirmative evidence' to rebut the presumption, and '[t]he decision of the [trial] court will not be reversed based on an isolated statement.' " *Gavin*, 2019 IL App (1st) 180881, ¶ 55 (quoting *People v. Weston*, 271 Ill. App. 3d 604, 616 (1995)). Without more, plaintiff's contextual reimagining of two words—"clearly" and "established"—used in sequence by the trial court is not strong affirmative evidence that the court *sua sponte* obligated him "to plead around qualified immunity." When placed in their proper context, the court's comment about plaintiff's second amended complaint being "devoid [of] factual allegations to support a finding of any violation of a clearly established right under the identified amendments" did not indicate that it found Matos qualifiedly immune; it referred to the court's explanation of the necessary elements plaintiff needed to plead and his failure to do so. Accordingly, as to plaintiff's claims directed against Matos in his individual capacity, we find plaintiff's request for relief in the form of attorney fees and costs forfeited. See *Perez*, 2016 IL App (1st) 152087, ¶ 29.

¶ 23                           III. CONCLUSION

¶ 24    For the reasons stated, we affirm the trial court's judgment.

¶ 25    Affirmed.